IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GLORIA LYTLE, et al.,** | No. 1:05-CV-0133 |
| **Plaintiffs** | JUDGE SYLVIA H. RAMBO |
| v. | |
| **CAPITAL AREA INTERMEDIATE UNIT, et al,** | |
| **Defendants** | |

**M E M O R A N D U M**

Before the court is Defendants' motion to strike the affidavits of Plaintiff Gloria Lytle and Plaintiff Roger Morrison filed in support of Plaintiffs' cross-motion for summary judgment on whether Plaintiffs were employees or independent contractors. The court has reviewed the parties submissions and will now rule on the motion.

**I.      Background**

Plaintiffs' claims arise out of the relationship between Defendant Capital Area Intermediate Unit ("CAIU") as educational and transportation service providers and Plaintiffs as transportation contractors hired to provide transportation services for CAIU. On January 19, 2005, Plaintiffs filed a complaint, alleging, among other things, that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by engaging in harassment, intimidation, discrimination, humiliation, and retaliation to punish Plaintiffs for reporting Defendants unlawful conduct. (Doc. 66 at 2–3.) Plaintiffs also allege six additional state law claims arising out of the same common set of facts and transactions under the umbrella of supplemental jurisdiction. (Doc. 53.) Defendants filed motions to dismiss (Docs. 40, 42), and the court stayed disposition of these motions pending completion of

discovery regarding the question of whether Lytle and Morrison were employees for purposes of the False Claims Act or independent contractors, a threshold issue. (Doc. 53 at 3–4.)  Defendants submitted a motion for summary judgment on October 22, 2008 (Doc. 64), and Plaintiffs filed a cross-motion for summary judgment that same day (Doc. 67).  Both parties have filed supporting documents, and the summary judgment motions are ripe for disposition.  (*See* Docs. 65–67, 74–76, 77–79, 83–86, 90.)  On November 21, 2008, Defendants filed a motion to strike the affidavits of Plaintiffs Lytle and Morrison along with a supporting brief.  (Doc. 83–84.)  On December 6, 2008, Plaintiffs filed a brief in opposition to the motion to strike (Doc. 89), and Defendants filed a reply on December 22, 2008 (Doc. 90).  Accordingly, the motion to strike is ripe for disposition.  The court will now rule on the motion.

**II.**     **Legal Standard**

In ruling on a motion for summary judgment, a court may consider, among other things, affidavits when determining whether no genuine issue of material fact exists such that a party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir. 2001). Affidavits filed in support of a motion for summary judgment may be considered for the purpose of ascertaining whether a party has raised an issue of fact.  *Frederick Hart & Co. v. Recordograph Corp.*, 169 F.2d 580, 581 (3d Cir. 1948).

A party, however, may not escape summary judgment by attempting to create a material issue of fact "by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).  Indeed, trial courts have a "practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for

summary judgment when the affidavit contradicts the affiant's prior deposition." *Id.* Courts disregard such "sham affidavits" when the affidavit "flatly contradicts" a deposition "without satisfactory explanation." *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705–06 (3d Cir. 1988). Disregarding "sham affidavits" serves the important purpose of preventing the serious impairment of the "objectives of summary judgment." *Id.* at 706 (citing *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986); *Miller v. A. H. Robins Co.*, 766 F.2d 1102 (7th Cir. 1985); *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656 (11th 1984); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540 (9th Cir. 1975); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)).

Nonetheless, in certain situations, a subsequent affidavit may correct sworn testimony where "the witness was confused at the earlier deposition or for some other reason misspoke." *Id.* at 705. Situations may arise where an affidavit does not "raise a new or distinct matter," but rather explains certain aspects of a deposition testimony that caused confusion. *Baer*, 392 F.2d at 625. Courts will generally not declare an affidavit a sham if it helps to correct a mistake or resolve "ambiguous testimony." *See, e.g.*, *St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160–161 (D.D.C. 2008); *Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc.*, 486 F. Supp 2d 855, 857 (noting that the "sham affidavit rule" does not apply to "elaboration on ambiguous testimony that the other party failed to clarify during a deposition").

In determining whether an affidavit constitutes a sham, courts will consider "whether corroborating evidence" ameliorates the concerns that gave rise to the "sham affidavit" doctrine. *Baer*, 392 F.3d at 625. For example, as a general rule, "[w]hen there is independent evidence in the record to bolster an otherwise

3

questionable affidavit, courts generally have refused to disregard the affidavit." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007). "Such corroborating evidence may establish that the affiant was 'understandably' mistaken, confused, or not in possession of all the facts during the previous deposition." *Id.* (quoting *Baer*, 392 F.3d at 625).

**III.**     **Discussion**

Defendants argue that the court should strike the affidavits of both Plaintiff Lytle and Plaintiff Morrison because they amount to "sham affidavits" that contradict earlier deposition testimony. Defendants argue that Lytle's affidavit contradicts her deposition testimony on two grounds: first, Lytle's deposition testimony contradicts the claim in her affidavit that she drove a vehicle, and a route, for the CAIU, as a full time driver from 1974 through 2001 and second, her deposition testimony along with Morrison's deposition testimony contradict the clarification of the phrase "changing routes" provided in her affidavit. Defendants also argue that Lytle's deposition testimony contradicts the statement in Morrison's affidavit that he drove a vehicle, and a route, for CAIU as a driver for Lytle Transportation. The court will review each of these three arguments individually.

**A.     Lytle as Full Time Driver**

Defendants urge the court to strike Lytle's affidavit because her statements regarding driving vehicles and routes for CAIU contradict her prior deposition testimony. Lytle's affidavit affirms the following statements regarding driving:

> 2.   From 1974 through 2006, I provided services as a transportation contractor to the Capital Area Intermediate Unit.
>
> 3.   From 1974 to 2001, I drove a vehicle, and a route, for the CAIU, as a full time driver.

> 4. From 2001 to 2004, I drove a vehicle, and a route, for the CAIU as a long term substitute for Lytle Transportation; and as a short term substitute for Lytle Transportation, as necessary.

(Doc. 83 ex. A.)

Defendants argue that two aspects of Lytle's deposition testimony contradict these statements. First, Defendants argue that Lytle testified that she provided the same services for the CAIU when she operated as a sole proprietor and under Lytle Transportation, but never testified that she drove during this earlier time period. Defendants cite to the following passage in Lytle's deposition testimony:

> A. . . . well, Lytle Transportation, Incorporated. I started working in 1974 for the Intermediate Unit. I was 18.
>
> Q. What did you do from '74?
>
> A. I started—I became a contractor in '74.
>
> Q. So from '74 to '95, you did it as a sole proprietor?
>
> A. Yes.
>
> Q. Similar to what you did and what you have described for me from '95 to '96.

(*Id.*) Along these same lines, Defendants point to Lytle's response "[t]hat's fair" to the question "[a]nd when we talk about this '95 when Lytle Transportation, Inc. came into existence through July of '06, I assumed what you're telling me there for that time frame, how you ran the corporation, is the same practice you did in the prior period from '74 to '95. Is that a fair statement?" (*Id.*) Defendants argue that this testimony contradicts Lytle's affidavit because ""[n]one of Lytle's prior testimony regarding her services for, or role as owner of the transportation contractor, even referenced the fact that she actually drove vehicles." (Doc. 83 at 6.)

5

Second, Defendants argue that Lytle testified that she drove "periodically" from 1995 through 2004 and "only when she did not have a substitute driver."  Defendants cite to the following passage:

> Q. Were you driving at all [from 2004–06]?
>
> A. No.
>
> Q. Did you ever drive from, say, '95 through July of '06?
>
> A. Periodically.  No, not until July of '06.  In '04, I was finished driving.
>
> Q. Okay.  And during those time frames where you would periodically drive, if one of your drivers couldn't make it for whatever reason, you would fill in for them?
>
> A. In the earlier time frame?
>
> Q. From '95, let's say, through '04?
>
> A. Yes.
>
> Q. Okay.  So if you had a driver call in sick, you would say, okay, fine, I'll cover your route that particular day?
>
> A. If I didn't have a substitute that could, I would.

(Doc. 83 ex. A.) Defendants argue that this passage together with Lytle's testimony that she did not do all the driving for Boyo Transportation, who she subcontracted from 1999–2002, and "actually drove [herself] a few months of the run [for Boyo Transportation]" "blatantly contradict" her affidavit.  (Doc. 83 at 6–7.)

The court disagrees with Defendants characterization of the affidavit as blatantly contradictory.  To begin with, although Defendants cite to several ambiguous passages that may suggest that Lytle drove rarely, if at all, Defendants failed to directly ask Lytle to clarify this testimony.  In particular, Defendants failed to ask whether Lytle drove full time for CAIU from 1974 to 2004, failed to asked clarifying questions regarding her relationship with Boyo Transportation, and failed

6

to ask whether she drove from 1974 through 1995. Moreover, the affidavit and the deposition contain ambiguities that undermine the suggestion that they contain contradictory statements. Defendants failed to clarify the meaning of the term "periodically," and the affidavit fails to define "full time," "long-term substitute," and "short-term substitute." The court will refrain from completely disregarding the affidavit merely because of ambiguities and holes in Lytle's testimony.

### B.   Lytle's Ability to "Change Routes"

Defendants suggest a second basis for disregarding Lytle's affidavit: Lytle's definition of "changing routes" provided in her affidavit contradicts descriptions of her authority to substitute driver's and make changes to driver's routes. Lytle's affidavit states:

> By "changing routes," I meant taking already established routes, created by the CAIU, and removing one Lytle driver, placing another Lytle driver on that route, and placing the first Lytle driver on another already established route. I could move a driver from one Lytle vehicle to another Lytle vehicle. However, when a change in drivers was necessary, I was required to notify the CAIU. I was not, however, permitted to change the route or the students on a particular vehicle, without the CAIU's approval.

(Doc. 83 ex. A.)

Defendants argue that this description of authority contradicts prior deposition testimony by both Lytle and Morrison regarding Lytle's authority.

Defendants quote the following testimony by Lytle:

> Q. Now, you told me earlier in your testimony that you would sometimes substitute for a particular driver if a driver called in sick or was unable to make the run that particular day. Do you recall that?
>
> A. Yes, I recall that.
>
> Q. Would you ever substitute in other drivers that were approved that you had available to you?
>
> A. Do you mean would I use my substitutes?
>
> Q. Yes.

7

> A. Yes.
>
> Q. Okay. That was a decision that you made as the owner of Lytle Transportation? Do you understand the question?
>
> A. No, I really don't.
>
> Q. Sure. One day you come into work and a driver calls and says, I can't make my run today. You would go and pick a substitute driver to run that route, correct?
>
> A. As long as they were qualified and had all the paperwork, yes.
>
> Q. Right. But those were decisions that you made, correct.
>
> A. Correct.
>
> Q. And were there times where a driver was driving a particular route for Lytle Transportation and you changed the driver's route?
>
> A. Yes
>
> Q. Okay. And was that a decision you made?
>
> A. Not always.
>
> Q. Did you make it some of the times?
>
> A. Sometimes.
>
> Q. And why did you make such a decision?
>
> A. It might be for a number of reasons. It could be that—the driver wasn't getting home until too late or the driver—the run changed in a way that it was more efficient for another driver to be doing it.
>
> Q. So you would jockey around the various drivers, if needed, and change their routes if the circumstances required that?
>
> A. Yes, if the circumstances required it, I would.
>
> Q. That was within your discretion to do?
>
> A. Yes.
>
> Q. Okay.
>
> A. I could do that, but those changes had to be recorded and turned in to the Intermediate Unit.

(*Id.*)

In addition to this passage, Defendants cite to Morrison's testimony that he had the "ability as the owner of the company to pick drivers and assign those to particular routes . . . " and that "it's the contractor's responsibility to go to parents, see parents, set up schedules and take care of any problem that might arise."  (*Id.*)

Defendants have failed to persuade the court that Lytle's affidavit contradicts this prior testimony.  Lytle's affidavit delineates the parameters of the authority held by Lytle Transportation, defining the power as limited to (a) changing the assignment of driver's to routes already created by CAIU and (b) transferring driver's from one Lytle vehicle to another Lytle vehicle.  Her affidavit further states that CAIU required that she notify them before changing driver's, and she needed to obtain approval from CAIU prior to changing a route or the students on a particular vehicle.  This affidavit appears to merely clarify the deposition testimony that she could set up schedules and switch driver's routes.

Regardless, the language used during the deposition is sufficiently ambiguous to warrant consideration of the affidavit.  For example, the phrase "changed the driver's route" seems to mean changing which route a particular driver takes.  A phrase such as "changed the physical route" or "changed the nature of the route" could have clarified this ambiguity.  Accordingly, the court will not strike Lytle's affidavit on this basis.

### C.     **Morrison as a Driver for Lytle Transportation**

Defendants also seek to strike Morrison's affidavit based on Lytle's deposition testimony.  They base this objection on the statement in Morrison's affidavit that "[f]rom 2004 to 2006, I drove a vehicle, and a route, for the CAIU as a driver for Lytle Transportation."  (*Id.*)  They argue that the following testimony made by Lytle during deposition contradicts that statement:

Q.    Okay.  Well, why don't you just kind of run through what he did.

>   A.   Okay.  He spoke with—he actually was my go-between the office and myself, the IU office.  I was—at that point, I was no longer working for Boyo.
>
>   He was a go-between between the office.  He did the paperwork.  He dealt with the drivers.  He dealt with the parents.  He dealt with the runs.

(Doc. 83 at 8.)

       This passage, manipulated by Defendants, in fact reads:

>   Q.   So sometime in '04 you ramped up or dramatically increased Lytle Transportation's business.
>
>   A.   Yes.
>
>   Q.   Okay.  And what led to that?
>
>   A.    Roger Morrison went out of business.
>
>   Q.    So how did that affect Lytle?
>
>   A.   The day after he parked his vehicles, there was a meeting to hand out work.  And so I was able to purchase some of his vehicles and add additional work.
>
>   Q.   And did he begin working for Lytle?
>
>   A.   As a manager.
>
>   Q.   You hired him as a manager?
>
>   A.   Yes.
>
>   Q.   What did his responsibilities include?
>
>   A.   Everything.
>
>   Q.   Can you give me a for instance?  Did he make the coffee?
>
>   A.   He made—he did everything.
>
>   Q.   Okay.  Well, why don't you just kind of run through what he did?
>
>   A.   Okay. He spoke with—he actually was my go-between between the office and myself, the IU office.  I was—at that point, I was no longer working for Boyo.

> He was a go-between between the office. He did the paperwork. He dealt with the drivers. He dealt with the parents. He dealt with the runs. He did—did everything.[1]

(Doc. 83 ex. A.)

As the complete passage makes apparent, no contradiction exists between Morrison's affidavit and Lytle's deposition testimony. Lytle testified that Morrison "did everything," a way of signaling that she had provided a non-exclusive list of his duties. Her use of the term left doubt regarding Morrison's actual responsibilities. An affidavit clarifying that he drove serves merely to eliminate this doubt and is not contradictory. Accordingly, Defendants have failed to persuade the court that it should strike Morrison's affidavit.

**IV.** **Conclusion**

In accordance with the foregoing discussion, the court will deny Defendants' motion to strike the affidavits of Lytle and Morrison.

                                                                s/Sylvia H. Rambo
                                                              SYLVIA H. RAMBO
                                                              United States District Judge

Dated: January 9, 2009.

---

[1] The court expresses displeasure at Defendants' manipulation of deposition testimony to support their position. Moreover, this is not the only instance in which Defendants in their briefing have removed passages to bolster their position.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLORIA LYTLE, et al.,** | : | **No. 1:05-CV-0133** |
| **Plaintiffs** | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| v. | : | |
| **CAPITAL AREA INTERMEDIATE UNIT, et al,** | : | |
| **Defendants** | : | |

# O R D E R

In accordance with the foregoing discussion, **IT IS HEREBY ORDERED THAT** Defendants' motion to strike the affidavits of Gloria Lytle and Roger Morrison (Doc. 83) is **DENIED**.

                                                s/Sylvia H. Rambo
                                                SYLVIA H. RAMBO
                                                United States District Judge

Dated: January 9, 2009.